## RILEY *v.* STATE.

May 4, 1953

No. 38729 30 Adv. S. 18 64 So. 2d 572

452

*Crawley & Brooks,* for appellant.

*J. T. Patterson,* Assistant Attorney General, for appellee.

KYLE, J.

The appellant, Matthew Riley, who was also known as "Jake Riley", was indicted, tried and convicted in the circuit court of Attala County on a charge of com-

mitting an assault and battery upon the person of Gip Evans, with a deadly weapon, to-wit, a pistol, by unlawfully, willfully, intentionally and feloniously pointing and aiming the pistol at and toward Gip Evans, and while so doing shooting and wounding the said Gip Evans, not in his necessary self defense, and not in the lawful discharge of official duty. The court sentenced the appellant to imprisonment in the state penitentiary for a term of four years, and from that judgment the appellant prosecutes this appeal.

The record shows that the shooting occurred while a crap game was in progress at Cap Stingley's house about 7:30 p. m., March 1, 1952. At the time the trouble started Gip Evans was seated on his hunkers against the wall only a few feet from the place on the floor where the game was being played. Bud Allen was shooting the dice and the appellant, Matthew Riley, was fading him, each betting a nickel. According to Gip Evans' testimony, the appellant claimed that Gip owed him a nickel. Gip said that he did not owe the appellant a nickel. Gip's account of what happened then is as follows: ''Q. Tell the jury what happened. A. He said I owed him a nickel. Q. Who said that? A. Matthew. Q. All right. A. And I says, 'No, I don't owe you any nickel,' and he says, 'Yes, you do,' and I says, 'All right, if you say I owe you a nickel I will pay you,' and I handed him a nickel; and I thought that was all there was to it; and he gets up and I wasn't paying any attention to him. I figured we was all through, and I looked up and K. W. had him by the hand, and I says, 'I better get up'; and the gun went off, and I started getting up, and everybody was scrambling to get out of there, and I didn't see the gun no more. I heard a shot and I felt something hit me. He had shot me, and everybody left, and there wasn't nobody there but me.''

Five other witnesses testified for the State. All of them, except K. W. Stingley, gave substantially the same

account of the shooting as that given by Gip; and Stingley's testimony differed from the testimony of the other witnesses in only a few details. The witnesses testified that when the appellant drew his gun to fire the first time, K. W. Stingley grabbed his arm, and the bullet went up through the top of the house. It was at that time that the other members of the party scurried from the room; and when the second shot was fired there were no other witnesses left in the room. K. W. Stingley testified that, when the trouble started, Gip advanced toward the appellant, and the appellant told him to stop twice, and that the appellant pulled his gun when Gip kept coming toward him. But that part of K. W.'s testimony was contradicted by the testimony of the other witnesses.

Gip admitted that he had been drinking, and the testimony of the other witnesses showed that the appellant had also been drinking, and that both were "pretty full." Gip also admitted that he had a pair of iron knucks in his pocket. But no witness testified that Gip drew the knucks from his pocket, or that he ever attempted to use them. No witness, other than K. W. Stingley, testified that Gip made any movement toward the appellant at any time that might have been construed as a hostile movement.

After the shooting the appellant carried Gip to Durant for medical treatment. The doctor found that the bullet had entered Gip's chest near the heart, and Gip was removed later to the Veterans Hospital in Jackson, where an operation was performed. Gip remained in the Veterans Hospital 87 days.

The appellant offered no testimony on his own behalf, and he did not testify himself.

The appellant's attorneys argue two points on this appeal: (1) That the court should have granted the peremptory instruction requested by the defendant, and (2) that the court erred in refusing to grant three other instructions requested by the defendant.

As to the first point argued by the appellant's attorneys, we think that the testimony was sufficient to prove the charge alleged in the indictment, and that there was no error in the court's refusal to grant the peremptory instruction requested by the defendant.

We also think that the other instructions mentioned above were properly refused. The first of these instructions dealt with the element of reasonable doubt. The court had already granted two instructions, which clearly informed the jury that the burden of proof rested upon the State to prove the defendant's guilt beyond every reasonable doubt. And the instruction which the court refused to grant was properly refused for the reason that the instruction was uncertain in its meaning, and if granted, would have had a tendency to confuse the jury rather than help the jury in arriving at a proper verdict.

In the second instruction which the court refused to grant, the court was requested to instruct the jury ''that if, after hearing all of the evidence in this case, there is a 'probability' that the shooting in this case was an accident and that the defendant had no criminal intent at the time of the shooting to harm the said Gip Evans, then in that event it will be your duty to find the defendant not guilty.'' This instruction was likewise properly refused, for the reason that there was no proof in the record to support the theory that the shooting was an accident. The appellant, as we have stated, offered no witness on his own behalf; and the testimony of the State witnesses showed clearly that the shooting was not accidental.

The last instruction which the defendant requested and the court refused to grant presented only the abstract question as to whether the defendant, ''at the time of the actual shooting, from all the evidence produced, was acting as a reasonable man would have been calculated to act under like circumstances.'' The instruction does not embody a statement of the law of self

defense, or any other theory that would justify the appellant's action in shooting Gip Evans. There was no proof in the record to show that the defendant at the time he fired the shot that penetrated the body of Gip Evans near the heart was in real or apparent danger of losing his life, or suffering great bodily harm at the hands of Gip Evans, and the instruction was properly refused. Labbous v. State, 195 Miss. 295, 15 So. 2d 687.

We find no error in the record and the judgment of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Ethridge* and *Lotterhos, JJ.,* concur.